**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CLARKWESTERN DIETRICH BUILDING SYSTEMS LLC, d/b/a CLARKDIETRICH, <br><br> Plaintiff, <br><br> vs. <br><br><br> ALLSTEEL & GYPSUM PRODUCTS, INC., a Florida corporation, et al., <br><br> Defendants. | Case No.: 2:14-cv-01319-RFB-GWF <br><br> **ORDER** <br><br> **Re: Motion for Leave to Amend Answer (#56)** |

This matter is before the Court on Defendants' Motion Seeking Leave to File First Amended Answer of Defendants (#56), filed on January 21, 2015. Plaintiff's filed their Opposition (#57) on February 6, 2015 and Defendants filed their Reply (#61) on February 17, 2015. The Court conducted a hearing in this matter on March 10, 2015.

**BACKGROUND**

Plaintiff ClarkWestern Dietrich Building Systems, LLC ("ClarkDietrich") filed its complaint on August 13, 2014 alleging claims against the Defendants for conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1; Violation of RICO, 18 U.S.C. §§ 1962(c), 1962(d) and 1964(c); intentional interference with prospective economic advantage; common law civil conspiracy; and unjust enrichment. Defendants filed their answer on September 8, 2014. On October 2, 2014, the Court approved the parties' proposed discovery plan and scheduling order which provided that the parties had until February 6, 2015 in which to file any motions to amend the pleadings.

Defendants' instant motion seeks to amend their answer to allege the following affirmative defenses: **Twenty-Fifth Affirmative Defense:** The anti-trust claim under the Sherman Act is barred under the *Noerr-Pennington* doctrine; **Twenty-Sixth Affirmative Defense:** The claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, is barred under the *Noerr-Pennington* doctrine; and **Twenty-Seventh Affirmative Defense:** The claims of Plaintiff are barred by the First Amendment to the United States Constitution. *Motion (#56), Proposed First Amended Answer, pgs 30-31.* Plaintiff opposes the motion on the grounds that the proposed affirmative defenses are invalid as a matter of law and the proposed amendment would therefore be futile.

Plaintiff ClarkDietrich alleges that it, and its predecessor entities, manufacture nonstructural steel framing products, steel studs and tracks, which are used to create interior walls of office buildings, hotels, warehouses, stores and other commercial buildings. Plaintiff uses "large scale cold reduction mill technology" and equivalent "EQ" coatings in the manufacture of its products which allegedly give it a cost and economic advantage over its competitors. Defendants are competing manufacturers of nonstructural steel framing products and were or are members of the Steel Stud Manufacturers Association, Inc. ("SSMA"), a trade association of steel framing product manufacturers. Plaintiff was also formerly a member of the SSMA. *Complaint (#1)*, ¶¶ 15-18.

Plaintiff alleges that in 2009 an Ohio manufacturer, Marino/WARE, filed a lawsuit against Plaintiff's predecessor companies in the United States District Court in New Jersey which involved the parties' disagreements about the interpretation of various industry standards relating to the manufacture of nonstructural steel framing products. The parties entered into a settlement agreement in January 2010 which referenced the SSMA's development of a program pursuant to which it would certify nonstructural steel framing products as compliant with applicable building codes. The parties agreed to cooperate with the SSMA in its development of the "SSMA Compliance Program" and to comply with it when it became effective. *Complaint (#1)*, ¶¶ 19-20.

Thereafter, the SSMA's Technical Task Force drafted, approved and recommended for adoption technical requirements which were met by Plaintiff's products. ¶ 22. Plaintiff alleges, however, that the Defendants conspired to add "sham elements" to the SSMA Compliance Program

which included a "ductility"/"elongation" requirement and a "coatings" requirement that had not been recommended by the Technical Task Force.  Plaintiff's nonstructural steel products could not comply with the additional requirements.  Plaintiff alleges that there was no scientific, technical, engineering or safety justification for these requirements and that the Defendants conspired to have the SSMA adopt them in order to eliminate Plaintiff's competitive advantage.  ¶ 23.

Prior to the October 2010 SSMA meeting in Las Vegas, Plaintiff and the Association of the Walls and Ceiling Industry ("AWCI"), an association of companies that purchase nonstructural steel framing products, sent letters to the SSMA board of directors and members objecting to the proposed "ductility/"elongation" and  "coatings" requirements.  Plaintiff warned the SSMA and the Defendants that the adoption of these requirements would violate anti-trust law.  ¶¶ 24-26.  Notwithstanding these objections and warnings, a majority of the SSMA members, including the Defendants, voted to adopt the SSMA Compliance Program with the "ductility/"elongation" and "coatings" requirements. ¶ 27.  Plaintiff alleges that "[t]he adoption of the sham standards had an immediate and lasting impact" on its business and that its share of the nationwide market dropped significantly.  ¶¶ 28-29.

In addition to alleging that Defendant's conduct in promoting and adopting the "sham standards" was unlawful, Plaintiff further alleges as follows:

> 96.   On November 12, 2010, in an effort to intimidate AWCI into backing the sham SSMA standards, SSMA's General Counsel wrote to AWCI, threatening to sue AWCI and its President over its opposition to the sham standards.  The SSMA had no good faith basis to threaten a lawsuit, which would have itself been a sham.

*Complaint (#1)*, ¶ 96.

Plaintiff alleges that the AWCI responded to the letter by advising the SSMA that its actions were not constructive and that it would "not be intimidated into shirking its responsibility to the industry."  ¶ 97.  Plaintiff's first claim for relief for conspiracy to restrain trade in violation of Section 1 of the Sherman Act, incorporates each preceding paragraph of the complaint, including paragraph 96. ¶ 139.  Plaintiff also specifically includes the allegations in paragraph 96 as part of the fraudulent and predicate acts of wire and mail fraud in its second claim for relief under the RICO statutes. ¶¶ 131, 150, 154, 155, and 158.

**DISCUSSION**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that where leave of court is required to amend a pleading, leave should be freely given when justice so requires. Within this liberal standard, the court has the discretion to deny leave to amend based on consideration of the following factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment and whether the party has previously amended its pleading. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004), citing *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003). "'Futility alone can justify the denial of a motion to amend.'" *Id.* In this case, Defendants moved for leave to amend their answer within the scheduling order deadline for such motions. Defendants have not previously amended their answer, and there is no allegation that Defendants have acted in bad faith or engaged in undue delay, or that Plaintiff will be unfairly prejudiced if the amended answer is allowed. The sole basis for objection is that the amendment is futile. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), citing *Baker v. Pacific Far East Lines, Inc.*, 451 F.Supp. 84, 89 (N.D.Cal. 1978) and 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed. 1974). *See also Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997).

There is a split of authority as to whether a motion to amend a pleading is a dispositive matter, particularly where the opposition is based on the alleged futility of the amendment. *Hall v. Norfolk Southern Railway Co.*, 469 F.3d 590, 594-95 (7th Cir. 2006) holds that a motion for leave to amend a pleading is a non-dispositive motion under 28 U.S.C. § 636(b)(1)(A). In *Allendale Mutual Ins. Co. v. Rutherford*, 178 F.R.D. 1, 2 (D. Me. 1998), however, the district court held that the magistrate judge's order denying defendant's motion to amend its answer was a dispositive ruling because it eliminated a potential defense. District courts within the Ninth Circuit also disagree on this issue. *See JJCO, Inc. v. Isuzu Motors America, Inc.*, 2009 WL 3818247 (D. Hawaii 2009) (magistrate judge's order denying leave to amend complaint was non-dispositive); *Gossett v. Stewart*, 2009 WL 3379018 (D. Ariz. 2009) (denial of motion for leave to amend was treated as dispositive because the denial would effectively dismiss four of plaintiff's proposed causes of

action). Because the undersigned concludes that leave to amend should be granted in this case, the concern with the potential dispositive effect of a decision on the motion is lessened, if non-existent. If an objection is filed to this order, however, the district judge may be required to determine the appropriate level of review. A magistrate judge's ruling on a non-dispositive matter may be reversed only if it is clearly erroneous or contrary to law. A recommendation on a dispositive motion, however, is subject to *de novo* review by the district judge. If the district judge determines that the subject motion is dispositive in nature, then the undersigned requests that this order be treated as a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Defendants seek to assert the *Noerr-Pennington* doctrine as an affirmative defense to Plaintiff's Sherman Act and civil RICO claims. Defendants also seek to assert their First Amendment rights as an affirmative defense to Plaintiff's complaint, generally. In *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500, 108 S.Ct. 1931, 1936-37 (1988), the Supreme Court summarized the *Noerr-Pennington* doctrine as follows:

> Concerted efforts to restrain or monopolize trade by petitioning government officials are protected from antitrust liability under the doctrine established by *Noerr*;[1] *Mine Workers v. Pennington,* 381 U.S. 657, 669–672, 85 S.Ct. 1585, 1593–1595, 14 L.Ed.2d 626 (1965); and *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The scope of this protection depends, however, on the source, context, and nature of the anticompetitive restraint at issue. "[W]here a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action," those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint. *Noerr,* 365 U.S., at 136, 81 S.Ct., at 529; see also *Pennington, supra,* 381 U.S., at 671, 85 S.Ct., at 1594. In addition, where, independent of any government action, the anticompetitive restraint results directly from private action, the restraint cannot form the basis for antitrust liability if it is "incidental" to a valid effort to influence governmental action. *Noerr, supra,* 365 U.S., at 143, 81 S.Ct., at 532–533. The validity of such efforts, and thus the applicability of *Noerr* immunity, varies with the context and nature of the activity. A publicity campaign directed at the general public, seeking legislation or executive action, enjoys antitrust immunity even when the campaign employs unethical and deceptive methods. *Noerr, supra,* 365 U.S., at 140–141, 81 S.Ct., at 531. But in less political arenas, unethical and deceptive practices can constitute abuses of administrative or judicial processes that may result in antitrust violations. *California Motor*

---

[1]*Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S.127, 81 S.Ct. 523 (1961)

*Transport, supra,* 404 U.S., at 512–513, 92 S.Ct., at 612.

In *Allied Tube*, the plaintiff, a manufacturer of polyvinyl chloride electrical conduit, sued the defendant under the Sherman Act for conspiring to prevent the inclusion of polyvinyl chloride electrical conduit in the National Electrical Code published by the National Fire Protection Association ("NFPA"). The plaintiff had initiated a proposal to include polyvinyl chloride conduit as an approved type of electrical conduit in the National Electrical Code. A professional panel of the NFPA approved the proposal and scheduled it for a vote at the NFPA's convention where it could be adopted or rejected by majority vote. The defendant conspired with members of the steel industry, other steel conduit manufacturers and independent sales agents to pack the NFPA's annual meeting with new members whose only function was to vote against the polyvinyl chloride proposal. The plan succeeded and the proposal was rejected.

The Supreme Court noted that the NFPA "is a private, voluntary organization with more than 31,500 individual and group members representing industry, labor, academia, insurers, organized medicine, firefighters, and government." 486 U.S. at 495, 108 S.Ct. at 1934. The National Electrical Code establishes product and performance requirements for the design and installation of electrical wiring systems, including conduit. The Court noted that a substantial number of state and local governments routinely adopt the code into law with little or no change, and that private laboratories normally will not list and label an electrical product that does not meet the code's standards. The Court also noted that insurance underwriters will not insure structures that are not built in conformity with the code and that many inspectors, contractors and distributors will not use a product that falls outside the code. *Id.*, 486 U.S. at 495-96, 108 S.Ct. at 1934. In holding that the defendant was not entitled to immunity under the *Noerr-Pennington* doctrine, the Court stated:

> Whatever *de facto* authority the Association enjoys, no official authority has been conferred on it by any government, and the decisionmaking body of the Association is composed, at least in part, of persons with economic incentives to restrain trade. See *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 707–708, 82 S.Ct. 1404, 1415, 8 L.Ed.2d 777 (1962). See also *id.,* at 706–707, 82 S.Ct., at 1414–1415; *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 791–792, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975). "We may presume, absent a showing to the contrary, that [a government] acts in the public interest. A private party, on the other hand, may be presumed to be acting primarily on his or its own behalf." *Hallie v.*

> *Eau Claire,* 471 U.S. 34, 45, 105 S.Ct. 1713, 1719–1720, 85 L.Ed.2d 24 (1985). The dividing line between restraints resulting from governmental action and those resulting from private action may not always be obvious. But where, as here, the restraint is imposed by persons unaccountable to the public and without official authority, many of whom have personal financial interests in restraining competition, we have no difficulty concluding that the restraint has resulted from private action.

*Allied Tube*, 486 U.S. at 501-02, 108 S.Ct. at 1937-38.

Although the Court recognized that the defendant's effort was also aimed at influencing state and local legislative bodies who adopt the NFPA's code, the Court declined to extend the *Noerr-Pennington* doctrine to the conduct at issue. *Id.*, 486 U.S. at 502-509,108 S.Ct. 1038-42. Insofar as Plaintiff ClarkDietrich's claims are predicated on Defendants' alleged conduct in causing the SSMA to adopt "ductility/elongation" and "coatings" requirements as association standards, *All Tube* appears to be "on all-fours" with this case and bars Defendants from asserting the *Noerr-Pennington* doctrine as an affirmative defense.

Defendants argue, however, that the affirmative defenses are properly asserted in regard to Plaintiff's allegations relating to civil actions between the parties. In *Sosa v. Direct TV, Inc.*, 437 F.3d 923 (9th Cir. 2006), the plaintiff alleged that Direct TV violated the RICO statutes by sending letters to thousands of individuals who had purchased smart card programming equipment, which could be used to illegally access Direct TV's satellite television programs, threatening them with civil legal actions unless they forfeited the equipment to Direct TV and paid Direct TV an unspecified sum to settle its claim. The district court dismissed the action on the grounds that Direct TV's sending of the demand letters was immunized from RICO liability under the *Noerr-Pennington* doctrine. In affirming the district court's decision, the Ninth Circuit noted that the Supreme Court has extended the *Noerr-Pennington* doctrine to matters outside the antitrust field. *Sosa*, 437 F.3d at 930. The court further noted that in *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 525, 122 S.Ct. 2390 (2002), the Supreme Court held that the doctrine prevented the NLRB from "impos[ing] liability on an employer for its unsuccessful prosecution of lawsuits that, while not objectively baseless, were brought for the purpose of retaliating against workers for exercising the rights the NLRA protects." *Id.* "The Court found that because the lawsuits at issue were not baseless, they did

not fall within the established 'sham litigation' exception laid out in *Professional Real Estate Investors, Inc. v. Columbia Picture Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ('*PRE II*'), or within the analogous rule in labor law contexts established in *Bill Johnson's*." *Id.* 437 F.3d at 930-31. In light of *BE & K's* application of *Noerr-Pennington* to the NLRA, *Sosa* concluded that the doctrine stands for a general rule of statutory construction, applicable to any statutory interpretation that could implicate rights protected by the Petition Clause of the First Amendment. *Id.*, 437 F.3d at 931. In determining whether the burdened conduct falls under the protection of the Petition Clause, the court "must give adequate 'breathing space' to the right to petition." *Id.*, at 932. The court noted, however, that neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions, and statutes need not be construed to permit them. *Id.*

     *Sosa* noted that "only litigation activities which constitute 'communication[s] to the court' may be fairly described as 'petitions.'" *Id.*, at 933, citing *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). Such communications include a complaint, answer, counterclaim, and assorted documents and pleadings filed by the parties. Although the presuit demand letters were not themselves petitions, the court stated that the Petition Clause may nevertheless preclude burdening them so as to preserve the breathing space required for the effective exercise of the rights it protects. *Id.* The court stated that "[c]onsistent with the breathing space principle, we have recognized that, in the litigation context, not only petitions sent directly to the court in the course of the litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr-Pennington* doctrine." *Id.*, at 934. The court concluded "that the connection between presuit demand letters and access to the courts is sufficiently close that the Petition Clause issues raised by providing a treble-damages remedy with regard to such letters are indeed substantial." *Id.*, at 936.

     Defendants argue that *Sosa* supports the assertion of the proposed affirmative defenses because Plaintiff's Complaint alleges that "the seeds of the conspiracy" go back to the prior New Jersey lawsuit. *See Reply (#61)*, pg. 5, quoting paragraphs 19 and 20 of the Complaint. The Court finds this basis for asserting the *Noerr-Pennington* doctrine to be unpersuasive. Plaintiff does not allege that Defendants' conduct in relation to the filing or prosecution of the New Jersey action provides grounds for imposing antitrust, RICO or state law liability on the Defendants. Rather, the

prior New Jersey action is discussed only for purposes of providing a historical context for the subsequent SSMA Compliance Program and the Defendants' alleged efforts to misuse that program for anti-competitive purposes.

Plaintiff, however, does allege that the SSMA sought to intimidate the AWCI into supporting the "ductility/"elongation" and "coatings" requirements by threatening to sue the association and its president over their opposition to those requirements. *Complaint (#1)*, ¶ 96. Plaintiff makes this allegation part of the factual basis for its Sherman Act conspiracy and RICO claims against the Defendants. Pursuant to *Sosa*, the *Noerr-Pennington* doctrine may provide a valid defense to the allegation in paragraph 96. The proposed Twenty-Fifth and Twenty-Sixth Affirmative Defenses therefore cannot be deemed futile at this point in the litigation. Plaintiff may, of course, be able to overcome these affirmative defenses by showing that the threatened lawsuit was not objectively reasonable and was further evidence of Defendant's wrongful intent.

Defendants' proposed Twenty-Seventh Affirmative Defense that Plaintiff's claims are barred by the First Amendment is arguably superfluous to its affirmative defenses based on the *Noerr-Pennington* doctrine. The Court will allow this affirmative defense with the understanding that it is predicated in the same analysis underlying the assertion of the *Noerr-Pennington* doctrine.

## CONCLUSION

Defendants' proposed Twenty-Fifth, Twenty-Sixth and Twenty-Seventh Affirmative defenses assert potentially valid defenses to a portion of the conduct alleged by Plaintiff to be in violation of

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

the antitrust laws and the RICO statutes. The proposed amendment is therefore not futile. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion Seeking Leave to File First Amended Answer of Defendants (#56) is **granted**.

**IT IS FURTHER ORDERED** that Defendants shall file their First Amended Answer on or before **March 23, 2015.**

DATED this 11th day of March, 2015.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge